# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, *ex rel.*, NORMAN McINTOSH, | |
| Petitioner, | Case No. 09 C 0518 |
| v. | Hon. Harry D. Leinenweber |
| TERRY McCANN, Warden, Stateville Correctional Center, | |
| Respondent. | |

## MEMORANDUM OPINION AND ORDER

### I. BACKGROUND

The Petitioner is incarcerated at the Stateville Correctional Center where he is in the custody of the warden of that facility, Frank Shaw. Petitioner was convicted, after a bench trial, of first degree murder of Devon Thompson, attempted first degree murder of James Hobson, aggravated discharge of a firearm, and aggravated battery. He received a forty-five-year sentence of imprisonment, which included a statutorily mandated twenty-five year sentence enhancement for personally discharging a firearm. Petitioner has filed this *habeas* petition which raises three claims:

1. His right to confront witnesses was violated when the state trial court limited cross-examination of Darius Thompson about his potential for bias due to pending criminal charges against him;

2. The twenty-five-to-life firearm enhancement of 730 ILCS5/5-8-1(a)(1)(d)(iii) violates the Due Process and Proportionate Penalty Clauses; and

3. Trial counsel was ineffective for failing to move to suppress identifications due to suggestibility or unreliability.

Respondent concedes that none of these claims have been procedurally defaulted.

## II. DISCUSSION

The State Appellate Court affirmed the trial court's decision and sentence with an unpublished decision. It contained a factual summary of the testimony before the trial court with which Petitioner does not take issue (except, of course, to deny his guilt).

The summary is as follows:

> Early in the morning on November 23, 2001, James Hobson, Devon Hobson, Darius Thompson, and Aaron Smith went to the corner of 71st and Throop in order to "stick up drug dealers." They were armed with a .22 caliber revolver. According to James, [Petitioner] pulled up in a vehicle with a "silverish looking" primed-up door and asked if they had any marijuana. Devon then pulled a gun on [Petitioner] and demanded money. Darius and Aaron opened [Petitioner]'s car door and took $20, some CDs, and a few bags of cocaine. James took [Petitioner]'s keys out of the ignition. After [Petitioner] got out of the car and started walking away, James threw the keys back to [Petitioner] and said "man, we don't want your car." [Petitioner] then got back into the car and started driving away. As he was driving away, [Petitioner] leaned out of the window of the car and said he was a

Vice Lord and would be right back to kill all of them.

While the group was walking near the corner of 59th and Honore, James noticed [petitioner] sitting in a car. [Petitioner] pulled his car up next to the group and started shooting. James began to run but stopped when his brother Devon was shot and fell to the ground. [Petitioner] then shot James in the chest. While Devon was trying to crawl away, [petitioner] backed up his car next to Devon, stuck his gun to the back of Devon's head, and shot him in the chest. James testified that he had the .22 caliber revolver in his jacket during the shooting. After James was shot in the chest, he bent over and the gun fell out. James then handed the gun to Darius and Aaron and told them to disappear.

James identified [petitioner] in a photo array and line-up as the person who killed Devon. James said he did not initially tell the police he had robbed someone before the shooting. James also admitted he was a member of the Black Disciples gang. James testified he had "[a]bout four or five" prior convictions.

Darius and Aaron also identified [petitioner] in a line-up as the person who shot Devon. Darius admitted he was a member of the Black Disciples gang. . . .

Iashiskala Sims testified that on November 24, 2001, she was with [petitioner]. According to Sims, she and [petitioner] woke up together. Sims then took [petitioner] to Mercy Hospital. After they left the hospital, Sims and [petitioner] returned to her house where they stayed for the remainder of the day. Sims testified [petitioner] was never out of her sight. Edgar Sarmiento, Jr., a nurse at Mercy Hospital, testified [petitioner] was treated at the hospital on November 24, 2001.

> [Petitioner] was discharged from the hospital at 7:05 a.m.
>
> The trial court found [petitioner] guilty of the first degree murder of Devon Thompson, the attempted murder of James Hobson, aggravated discharge of a firearm, and aggravated battery. The court noted that upon sentencing, all counts of the same class should merge. At the sentencing hearing, after reviewing the pre-sentence investigation report and hearing arguments of counsel, the trial court sentenced [petitioner] to 45-years *[sic]* imprisonment for first degree murder, which included an additional statutorily dictated 25-year sentence for personally discharging a firearm. The trial court also sentenced [petitioner] to concurrent sentences of six years for attempted murder, six years for aggravated discharge of a firearm, and three years for aggravated battery.

### A. Right to Cross Examination

The state appellate court provided the relevant facts and analysis for this claim:

During Darius' cross-examination, the following colloquy occurred:

> "Ms. Placek [defense counsel]: Q Where are you living?
>
> Mr. Shearer [Assistant State's Attorney]: Objection, Your Honor.
>
> The Court: Overruled.
>
> The Witness: Audy Home.
>
> Ms. Placek: Q You're Charged?

Ms. D'Souza [Assistant State's Attorney]: Objection.

The Court: Sustained.

Ms. Placek: Well, Judge, goes as to bias.

Mr. Shearer: Your Honor, we have an objection.

The Court: I don't think charges–

Ms. Placek: Q Do you have a case pending?

The Witness: A Yes.

Mr. Shearer: Same objection.

The Court: Sustained.

Ms. Placek: Goes to bias for testifying, Judge. Just for the record.

The Court: I understand. Sustained. . . .

* * *

[Petitioner] contends he was denied his constitutional right to cross-examine witnesses when defense counsel was prohibited from questioning Darius Thompson regarding a pending charge. . . . A defendant has a constitutional right to cross-examine witnesses concerning possible biases, prejudices, or ulterior motives for testifying. *People v. Davis*, 185 Ill.2d 317, 337 (1998); *People v. Foster*, 322 Ill.App.3d 780, 785 (2001). While the right to cross-examine witnesses is not within the discretion of the trial court, the scope of cross-examination does rest within the court's discretion. *Foster*, 322 Ill.App.3d at 785; *People v. Nutall*, 312 Ill.App.3d 620, 627 (2000). A trial court's ruling will not be overturned absent a clear abuse

of discretion.  *Foster*, 322 Ill.App.3d at 785; *Nutall*, 312 Ill.App.3d at 627.

The defense should be given wide latitude on cross-examination when trying to establish a witness' bias or motive. *People v. Ramney*, 152 Ill.2d 41, 67 (1992); *Nutall*, 312 Ill.App.3d at 627.  A defendant has the right to cross-examine a witness regarding pending criminal charges without first establishing that the witness was promised something in return for his testimony. *Foster*, 322 Ill.App.3d at 785; *Nutall*, 312 Ill.App.3d at 627. Additionally, where the facts reasonably suggest the witness might be motivated by a promise of leniency, the defendant should be allowed to explore that possibility on cross-examination. *Foster*, 322 Ill.App.3d at 785; *Nutall*, 312 Ill.App.3d at 627.  "However, the evidence offered must give rise to the inference that the witness has something to gain or lose by his or her testimony."  *Foster*, 322 Ill.App.3d at 785.

The improper denial of a defendant's constitutional right to cross-examination does not always mandate reversal, however, and may be found to be harmless error. *Davis*, 185 Ill.2d at 338.

We conclude that the trial court erred by improperly restricting [petitioner]'s cross-examination of Darius Thompson; however, we conclude the error was harmless.  While the record establishes defense counsel attempted to question Darius Thompson regarding whether any charges were pending against him, nothing in the record indicates what the pending charge was.   Due to the insufficiency of the record before us, we cannot properly determine the scope of the trial court's error. We note our task would have been made substantially easier if defense counsel had simply made an offer of proof on the record.  "An adequate offer of proof is the key to properly preserving a

> trial court's error in excluding evidence." *People v. Thompkins*, 181 Ill.2d 1, 10 (1998). In light of our inability to properly examine the issue, we conclude the trial court's error was harmless.
>
> Our decision is further supported by the fact that Darius Thompson's testimony was substantially corroborated by the testimony of James Hobson and Aaron Smith. While the trial court recognized minor inconsistencies exited in the witnesses' testimony, it noted there were no variations in the witnesses' identification of [petitioner] as the shooter.

As seen, the State Appellate Court found that Petitioner's right to cross-examine was violated when the trial judge prevented his counsel from inquiring as to charges pending against a government witness, Darius Thompson. However, the Court further found that the error was harmless. The basis for this finding was because Petitioner's counsel failed to make an offer of proof of what Thompson's answer would have been had he been allowed to give it, thus preventing the court from properly assessing the harm. The Court concluded, therefore, that the error was harmless. The Court also said its "harmless" conclusion was supported by substantial corroboration of Thompson's testimony by the testimony of the other eye witnesses, James Hobson and Aaron Smith.

What is the standard of federal review when the state court has found a violation of the Constitution but concluded that the error was harmless? The answer is contained in *Johnson v.*

*Gerardo Acevedo*, slip op., p 12, 7th Cir, July 14, 2009. If the state court has conducted a harmless-error analysis, the federal court must decide whether that analysis was a reasonable application of the standard "harmless beyond a reasonable doubt." *Chapman v. California*, 386 U.S. 18 (1967). If the answer is "yes," then the federal case is over and no collateral relief issues. *Mitchell v. Esparza*, 540 U.S. 12 (2003). If the answer is "no" either because the state court did not conduct a harmless-error analysis or because it applied the *Chapman* standard unreasonably, then Section 2254(d) does not apply and the federal court must make an independent decision, just as if the state court had not addressed the subject at all. The court is to apply the standard whether the violation "had substantial and injurious effect or influence in determining the . . . verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 628-29 (1993). This is a less onerous standard and the petitioner must show actual prejudice. *Brecht,* 507 U.S. at 637.

The first question to be asked is whether the Illinois Appellate Court conducted a harmless error analysis and if so was it applied unreasonably. As we have seen, the court stated that there was no harmless error for two reasons. First, the Petitioner did not make an offer of proof so the court was not able to determine properly the scope of the trial court's error. Second, the testimony of Darius Thompson was substantially

corroborated by the testimony of James Hobson and Aaron Smith. The court noted that there were no variations in the witnesses' identification of Petitioner as the shooter.

The Illinois State Court based its first finding of harmlessness under the Illinois common law which requires a defense counsel to make an offer of proof on the record as to what the excluded evidence would be to preserve a trial court's error in excluding evidence. Failure to do so waives the error. *People v. Thompkins*, 181 Ill.2d 1, 10 (1998). The law is the same in federal court. *See,* FED. R. EVID. 103(a)(2); *U.S. v. King*, 75 F.3d 1217, 1223 (7th Cir., 1996). The only exception is plain error and plain error itself cannot be demonstrated without a record having been made of what the error consists. *King* at 1223. All we know from the record is that the trial court struck Thompson's testimony that he had a case pending. For all we know his answer could have been that he had a civil case pending and he faced no criminal charges at the time or perhaps he had a pending traffic ticket. The court did allow testimony that Thompson at the time of trial was residing in the Audy Home from which one could conclude was the result of pending juvenile charges. This was argued by Petitioner's attorney in her closing argument without objection by the State. Moreover, this was a bench trial and did not involve a jury.

In addition, as pointed out by the Illinois Appellate Court, Thompson's testimony was essentially corroborated by the testimony of the two other eye witnesses. Further, the testimony of all three eye witnesses had considerable credibility because they had previously selected Petitioner from lineups, and Petitioner does not contend the lineups were improperly conducted. Thus, even if it could be argued that the excluding of the evidence of charges against Thompson was not waived, the State Court's harmless finding was reasonable.

### B. Whether the State Law Firearm Enhancement is Constitutional

Petitioner's second claim is that the twenty-five-years-to-life firearm enhancement provided in 730 ILCS 5/5-8-1(a)(1)(d)(iii) is unconstitutional. His argument is, apparently, that this statute violates due process. However the United States Supreme Court has held that state courts are free under the due process clause to impose whatever punishment is authorized by statute for the offense, so long as that penalty has a rational basis and is not cruel and unusual. *Chapman v. U.S.*, 500 U.S. 453 465 (1991). The issue is whether the Illinois legislature had a rational basis for distinguishing between persons convicted of offenses while armed from those who commit offenses while unarmed. The Illinois legislature made specific legislative findings, including that the use of weapons poses a

greater threat to public safety, that such use facilitates the commission of felonies, and an enhancement is likely to deter use of firearms in commission of a felony. These are rationally related to the legitimate state aim of protecting the public. This was the finding of the Illinois Supreme Court in *People v. Sharpe*, 216 Ill.2d 481 (2005) which concerned the Illinois due process clause. This Court agrees with that court that this constitutes a rational basis for the enhancement.

### C. Ineffective Assistance of Trial Counsel

Petitioner's claim of ineffective assistance is based on his lawyer's failure to move to suppress his identification by James Hobson. The evidence showed that Hobson originally identified Petitioner from a photo array. Apparently a police officer told Hobson after he had identified Petitioner as the shooter that the police had Petitioner in custody. Hobson later identified Petitioner in a lineup. Petitioner's counsel sought to have Hobson testify on cross-examination what he was told by the police officer but was prevented from doing so by the trial court's ruling that such a statement was hearsay. After counsel argued that it was not for the truth but to question the propriety of the line-up, the court allowed the testimony to stand. The Illinois Appellate Court held that the decision to question the line up at trial rather than through a motion to suppress was a matter of trial strategy entitled to "great

deference" and thus denied the claim. Therefore, the court adjudicated this issue on its merits.

*Strickland v. Washington*, 466 U.S. 668 (1984) guarantees defendants the right to effective assistance of trial counsel. It is a "clearly established" precedent of the United States Supreme Court. The issue, therefore, is whether the decision of the Illinois court was contrary to or an unreasonable application of *Strickland* or was based on an unreasonable determination of the facts. 28 U.S.C. § 2254(D). Here the appellate court acknowledged the application of *Strickland* and correctly stated its holding. Thus, the decision was not "contrary to" *Strickland*. It was also a reasonable application of *Strickland* because Petitioner has not come up with any indication that a motion to suppress the identification by Hobson would have been successful. *Thompson v. Battaglia*, 458 F.3d 614, 620 (7th Cir., 2006). In *Kubat v. Thieret*, 867 F.2d 351 (7th Cir., 1989), a witness was shown photo arrays on three separate occasions at which he identified the defendant and the court still held that while it was not optimum, nevertheless, the procedures were not so suggestive as to deny due process.

Here the Petitioner has not demonstrated that there was anything suggestive about the photo array other than his tee shirt said "thug" on it. He does not say what any of the others in the array were wearing. In short, he has given no indication

that a motion to suppress would have been successful. Furthermore, as noted above, two others identified Petitioner independently of Hobson. Petitioner does not argue that the additional identification testimony should have been suppressed. Finally, the judge that would have been asked to suppress the identification presided over the trial and found Petitioner guilty even after the identification procedures were described.

### III. CONCLUSION

For the reasons stated herein, the Petition for *habeas corpus* is denied.

**IT IS SO ORDERED.**

                                                Harry D. Leinenweber, Judge
                                                United States District Court

**DATE:** 7/27/2009